IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

| | |
|---|---|
| JEROSKY CALDWELL, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No.: 3:16cv077-WC |
| ) | |
| NANCY A. BERRYHILL, ) | |
| Acting Commissioner of Social Security,[1] ) | |
| ) | |
| Defendant. ) | |

# MEMORANDUM OPINION

## I.    INTRODUCTION

Jerosky Caldwell ("Plaintiff") filed applications for a period of disability and disability insurance benefits and for supplemental security income on September 14, 2009. The applications were denied at the initial administrative level. Plaintiff then requested and received a hearing before an Administrative Law Judge ("ALJ"). Following the hearing, the ALJ issued an unfavorable decision, and the Appeals Council denied Plaintiff's request for review. The ALJ's decision consequently became the final decision of the Commissioner of Social Security ("Commissioner").[2] *See Chester v. Bowen*, 792

---

[1]  Nancy A. Berryhill is now the Acting Commissioner of Social Security. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Nancy A. Berryhill shall be substituted for Acting Commissioner Carolyn W. Colvin as the Defendant in this suit. No further action needs to be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

[2]  Pursuant to the Social Security Independence and Program Improvements Act of 1994, Pub. L.

F.2d 129, 131 (11th Cir. 1986). Plaintiff then challenged the Commissioner's decision in this court. On June 18, 2014, the undersigned Magistrate Judge entered an order and judgment reversing the Commissioner's decision and remanding for further proceedings. *See Caldwell v. Colvin*, Civ. No. 3:13-cv-201-WC (Doc. 24, June 18, 2014). On remand, the ALJ conducted a second hearing and accepted additional evidence into the record. After the second hearing, the ALJ issued a decision finding that Plaintiff had not been under a disability during the relevant period. Plaintiff appealed that decision to the Appeals Council, which rejected his request for review. Thus, the ALJ's decision on remand once again stands as the final decision of the Commissioner. The case is now before the court for review of that decision under 42 U.S.C. § 405(g). Pursuant to 28 U.S.C. § 636(c), both parties have consented to the conduct of all proceedings and entry of a final judgment by the undersigned United States Magistrate Judge. Pl.'s Consent to Jurisdiction (Doc. 11); Def.'s Consent to Jurisdiction (Doc. 10). Based on the court's review of the record and the briefs of the parties, the court AFFIRMS the decision of the Commissioner.

## II.     STANDARD OF REVIEW

Under 42 U.S.C. § 423(d)(1)(A), a person is entitled to benefits when the person is unable to

> engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

---

No. 103-296, 108 Stat. 1464, the functions of the Secretary of Health and Human Services with respect to Social Security matters were transferred to the Commissioner of Social Security.

2

42 U.S.C. § 423(d)(1)(A).[3]

To make this determination, the Commissioner employs a five-step, sequential evaluation process. *See* 20 C.F.R. §§ 404.1520, 416.920 (2011).

> (1) Is the person presently unemployed?
> (2) Is the person's impairment severe?
> (3) Does the person's impairment meet or equal one of the specific impairments set forth in 20 C.F.R. Pt. 404, Subpt. P, App. 1 [the Listing of Impairments]?
> (4) Is the person unable to perform his or her former occupation?
> (5) Is the person unable to perform any other work within the economy?
> An affirmative answer to any of the above questions leads either to the next question, or, on steps three and five, to a finding of disability. A negative answer to any question, other than step three, leads to a determination of "not disabled."

*McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986).[4]

The burden of proof rests on a claimant through Step Four. *See Phillips v. Barnhart*, 357 F.3d 1232, 1237-39 (11th Cir. 2004). A claimant establishes a *prima facie* case of qualifying disability once they have carried the burden of proof from Step One through Step Four. At Step Five, the burden shifts to the Commissioner, who must then show there

---

[3]   A "physical or mental impairment" is one resulting from anatomical, physiological, or psychological abnormalities that are demonstrable by medically acceptable clinical and laboratory diagnostic techniques.

[4]  *McDaniel* is a supplemental security income (SSI) case. The same sequence applies to disability insurance benefits brought under Title II of the Social Security Act. Supplemental security income cases arising under Title XVI of the Social Security Act are appropriately cited as authority in Title II cases, and vice versa. *See, e.g.*, *Smith v. Comm'r of Soc. Sec.*, 486 F. App'x 874, 876 n.* (11th Cir. 2012) ("The definition of disability and the test used to determine whether a person has a disability is the same for claims seeking disability insurance benefits or supplemental security income.").

are a significant number of jobs in the national economy the claimant can perform. *Id*.

To perform the fourth and fifth steps, the ALJ must determine the claimant's Residual Functional Capacity ("RFC"). *Id*. at 1238-39. The RFC is what the claimant is still able to do despite the claimant's impairments and is based on all relevant medical and other evidence. *Id*. It may contain both exertional and nonexertional limitations. *Id*. at 1242-43. At the fifth step, the ALJ considers the claimant's RFC, age, education, and work experience to determine if there are jobs available in the national economy the claimant can perform. *Id*. at 1239. To do this, the ALJ can either use the Medical Vocational Guidelines ("grids"), *see* 20 C.F.R. pt. 404 subpt. P, app. 2, or call a vocational expert ("VE"). *Id*. at 1239-40.

The grids allow the ALJ to consider factors such as age, confinement to sedentary or light work, inability to speak English, educational deficiencies, and lack of job experience. Each factor can independently limit the number of jobs realistically available to an individual. *Phillips*, 357 F.3d at 1240. Combinations of these factors yield a statutorily-required finding of "Disabled" or "Not Disabled." *Id*.

The court's review of the Commissioner's decision is a limited one. This court must find the Commissioner's decision conclusive if it is supported by substantial evidence. 42 U.S.C. § 405(g); *Graham v. Apfel*, 129 F.3d 1420, 1422 (11th Cir. 1997). "Substantial evidence is more than a scintilla, but less than a preponderance. It is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *see also Crawford v. Comm'r of Soc. Sec.*, 363 F.3d

1155, 1158 (11th Cir. 2004) ("Even if the evidence preponderates against the Commissioner's findings, [a reviewing court] must affirm if the decision reached is supported by substantial evidence."). A reviewing court may not look only to those parts of the record which support the decision of the ALJ, but instead must view the record in its entirety and take account of evidence which detracts from the evidence relied on by the ALJ. *Hillsman v. Bowen*, 804 F.2d 1179 (11th Cir. 1986).

> [The court must] . . . scrutinize the record in its entirety to determine the reasonableness of the [Commissioner's] . . . factual findings. . . . No similar presumption of validity attaches to the [Commissioner's] . . . legal conclusions, including determination of the proper standards to be applied in evaluating claims.

*Walker v. Bowen*, 826 F.2d 996, 999 (11th Cir. 1987).

### III.   ADMINISTRATIVE PROCEEDINGS

Plaintiff was twenty-eight years old on the date of the second hearing before the ALJ, and had completed his high school education and some college coursework. Tr. 484. Following the administrative hearing, and employing the five-step process, the ALJ found at Step One that Plaintiff "has not engaged in substantial gainful activity since December 1, 2007, the alleged onset date[.]" Tr. 453. At Step Two, the ALJ found that Plaintiff suffers from the following severe impairments: "Schizophrenia, Paranoid Type and Mood Disorder." Tr. 454. At Step Three, the ALJ found that Plaintiff "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments[.]" Tr. 454-56. Next, the ALJ articulated Plaintiff's RFC as follows:

> the claimant has the residual functional capacity to perform medium work as defined in 20 CFR 404.1567(c) and 416.967(c) except for the following limitations: The claimant is limited to never climbing ropes and stairs; avoid all exposure to ladders, ropes and scaffolds; avoid concentrated exposure to extreme cold, vibrations, and noise; avoid all exposure to unprotected height, dangerous machinery and uneven surfaces.  The claimant is expected to have 1-2 unplanned absences from work per month.  Mentally, the claimant is limited to no more than simple, short instructions and simple work-related decisions with . . . few work place changes and low stress and no work at a fixed production rate pace.  The claimant is limited to occasional interaction with the general public, supervisors, and co-workers.  The claimant is unable to work in close proximity to others and is easily distracted and unable to concentrate.  The claimant is restricted from working in [an] environment requiring mathematical calculations.

Tr. 456.  Having consulted with a VE at the hearing, the ALJ concluded at Step Four that Plaintiff is "unable to perform any past relevant work[.]"  Tr. 466.  However, the ALJ next found that, based upon the testimony of the VE, "there are jobs that exist in significant numbers in the national economy that the claimant can perform."  Tr. 466.  The ALJ noted the following representative occupations: "Laundry Worker," "Cleaner," and "Automobile Detailer/Car Washer."  Tr. 467.  Accordingly, at Step Five, the ALJ determined that Plaintiff "has not been under a disability . . . from December 1, 2007, through the date of this decision[.]"  Tr. 467.

## IV.   PLAINTIFF'S ARGUMENT

Plaintiff presents two issues in his "Statement of the Issues," arguing that the ALJ's decision should be reversed because (1) the ALJ "assigned great weight to the medical opinions expressed by Dr. Stutts in which support a disability finding[,]" and (2) the ALJ "failed to compose a complete hypothetical question to the vocational expert."  Pl.'s Br. (Doc. 12) at 5.

## V. DISCUSSION

### A. The ALJ's treatment of Dr. Stutts's Opinion.

On remand from this court's earlier decision, the ALJ referred Plaintiff for a consultative mental examination. Dr. Stutts, a licensed psychologist, performed the examination. *See* Tr. 726-730. Based upon his examination, Dr. Stutts completed a Medical Source Statement opining, in pertinent part, that Plaintiff is mildly to moderately restricted in his abilities to "Understand and remember complex instructions[,]" "[c]arry out complex instructions[,]" and "make judgments on complex work-related decisions." Tr. 726. Dr. Stutts further opined that Plaintiff is moderately to markedly restricted in his abilities to interact appropriately with the public, supervisors, and co-workers, and to "[r]espond appropriately to usual work situations and to changes in a routine work setting." Tr. 727. Dr. Stutts indicated his belief that Plaintiff's impairment causes him to have "periods of poor judgment and [illegible]."[5] Tr. 727. Dr. Stutts recorded the result of his mental status examination of Plaintiff as follows:

> [Plaintiff] appeared WNWD [well-nourished, well-developed] and appropriately dressed and groomed. He was verbal with normal speech. He was oriented x4. He provided eye contact and rapport was average. He was calm today but I noted mildly pressured speech. He exhibited mild anxiety and some tangential and rambling style. Overt psychosis was not evident today. He told me he hears ongoing voices at times but denied acute psychosis. He denied current thoughts of self or other harm. He did not evince paranoia today. He tended to ramble but overall was coherent.
> Mr. Caldwell was successful on naming his age/DOB, his SS#, today's date, the number of days in a week and months in a year, the current and previous

---

[5] Although both the parties posit in their briefing that the final word in Dr. Stutt's handwritten script is "illegible," in the context of the sentence, and by the appearance of Dr. Stutts's script, it appears to the court that the word is "confusion."

7

> presidents, and his phone number and address. He did not know the governor. He recalled three objects after five minutes. He recited the alphabet and counted down from 20. He completed simple addition and subtraction. He completed simple abstractions and judgment items. He completed six digits forward and three reverse. His insight was fair and judgment questionable by history and intact today. His memory was intact. Effort was average and intellect appears average range when absent psychosis. His prognosis is guarded to fair with ongoing treatment.

Tr. 730. Dr. Stutts diagnosed "Schizophrenia, Paranoid Type (Provisional)." Tr. 730. Dr. Stutts explained that, due to the dearth of records available to him at the time, "[f]urther data is needed to finalize a diagnosis." Tr. 730. However, Dr. Stutts remarked that Plaintiff "appeared severely impaired based on today's data. He would require assistance with funds." Tr. 730.

In formulating Plaintiff's RFC, the ALJ considered Dr. Stutts's examination and opinion. Tr. 463. The ALJ essentially recounted Dr. Stutts's findings, but omitted reference to Dr. Stutts's remark that Plaintiff "appeared severely impaired based on today's data[,]" and that Plaintiff "would require assistance with funds." *See* Tr. 463. Nevertheless, the ALJ gave "great weight to Dr. Stutts' opinion as it is generally consistent with the record and the claimant's mental health complaints[.]" Tr. 463.

Plaintiff argues that the ALJ erroneously utilized only those parts of Dr. Stutts's opinion that supported a non-disabled finding, while ignoring parts of the opinion that supported a disability finding. Pl.'s Br. (Doc. 12) at 7-11. In particular, Plaintiff asserts that

> [t]he *totality* and combination of Dr. Stutts' medical opinions including his expression that [Plaintiff] appeared "**severely impaired**," exhibited moderate to **marked** limitations of functioning in the areas of ability to

8

> interact appropriately with the public, supervisor(s), co-workers, to usual work situations, and changes in a routine work setting, and demonstrated "**periods of poor judgment**" support a finding of disability.

*Id.* at 10 (emphasis in original).  Because, Plaintiff argues, "the ALJ assigned great weight to the medical opinions of Dr. Stutts in which support a disability finding without articulating a basis to reject any of them[,]" the ALJ's decision should be reversed and benefits awarded.  *Id.* at 10-11.

Alternatively, Plaintiff argues that the ALJ's failure to meaningfully discuss those aspects of Dr. Stutts's opinion that were not supportive of a non-disabled finding warrants reversal.  *Id.* at 11-12.  Highlighting those aspects of Dr. Stutts's opinion discussed above, Plaintiff maintains that the "ALJ's choice to not explain or address why he did not include Dr. Stutts' medical opinion of record into his RFC finding presents clear legal error" warranting reversal.  *Id.* at 12-13.

Upon review, the court finds no reversible error in the ALJ's use of Dr. Stutts's opinion.  Plaintiff does not explain why the ALJ's failure to mention Dr. Stutts's remark that Plaintiff appeared "severely impaired" warrants reversal.  To be sure, Dr. Stutts gave a provisional diagnosis of schizophrenia, paranoid type, Tr. 730, and the ALJ indeed found that to be one of Plaintiff's severe impairments.  Tr. 454.  Nothing in Plaintiff's RFC and the ALJ's related findings permits the conclusion that the ALJ did not view Plaintiff as severely impaired in the same fashion as did Dr. Stutts.  Likewise, Plaintiff does not explain how Dr. Stutts's findings of moderate to marked restrictions[6] in Plaintiff's ability to interact

---

[6]   According to the Medical Source Statement completed by Dr. Stutts, "moderate" restriction is

9

appropriately with supervisors, co-workers, and the public, as well as in his ability to respond appropriately to usual work situations and changes in a routine work setting necessitated a finding of disability, or even a more restricted RFC than that given by the ALJ.  The ALJ expressly limited Plaintiff to "no more than simple, short instructions and simple work-related decisions with few work place changes . . . and low stress[.]" Tr. 456.  Furthermore, the ALJ limited Plaintiff to only "occasional interaction with the general public, supervisors, and co-workers." Tr. 456.  The ALJ additionally found that Plaintiff "is unable to work in close proximity to others[.]" Tr. 456.  Plaintiff does not explain his contention that the ALJ's very limited RFC findings in this regard still somehow failed to account for Dr. Stutts's conclusion that Plaintiff is, in essence, more than slightly limited but less than seriously limited in the subject functional areas.  In any event, it is apparent that the ALJ carefully crafted an RFC that recognized Plaintiff's limited ability to interact with others and respond to the ordinary stressors in a work setting.  Finally, Plaintiff does not explain why Dr. Stutts's finding that Plaintiff's condition causes "periods of poor judgment" warranted a finding of disability or, at a minimum, a more restrictive RFC than that given by the ALJ.  In limiting Plaintiff to unskilled work with "simple, short instructions and simple work-related decisions with few work place changes . . . and low

---

defined as "more than a slight limitation . . . but the individual is still able to function satisfactorily[,]" while "marked" restriction means "[t]here is a serious limitation" in that there "is a substantial loss in the ability to effectively function." Tr. 726.  Thus, by the terms of the definitions on the form, in finding Plaintiff moderately to markedly restricted in the given functional areas, Dr. Stutts necessarily believed Plaintiff to be more than slightly limited but less than seriously limited in those abilities.

stress" with very limited interaction with the public and co-workers, the ALJ plainly crafted an RFC designed to minimize Plaintiff's exercise of judgment.  Furthermore, the ALJ had before him both Dr. Stutts's opinion that, notwithstanding any "periods of poor judgment," Plaintiff was only mildly to moderately impaired in his ability to "make judgments on complex work-related decisions," Tr. 726, and Plaintiff's own testimony that he had previously worked in a temporary job at an automotive parts supplier, and that he would probably have continued working in that job had it not been a temporary position.  Tr. 502-04.  Plaintiff points to no evidence in the record that should have caused the ALJ to believe that the "periods of poor judgment" opined by Dr. Stutts precluded Plaintiff from working or otherwise demanded a more limited RFC than that found by the ALJ.

The ALJ carefully reviewed Dr. Stutts's report and determined that it was entitled to "great weight."  Tr. 463.  Furthermore, the ALJ crafted an RFC that, even if it did not mention all of the express limitations opined by Dr. Stutts, undoubtedly recognized those limitations and incorporated restrictions based upon them.  Tr. 456.  The ALJ did not ignore Dr. Stutts's opinion or reversibly err in failing to discuss any pertinent part of the opinion.  Plaintiff therefore has not shown any error in the ALJ's treatment of Dr. Stutts's opinion.

      **B.**      **The ALJ's hypothetical to the VE.**

Plaintiff's remaining claim of error is that the ALJ "failed to compose a complete hypothetical question to the vocational expert."  Pl.'s Br. (Doc. 12) at 13.  Plaintiff argues that the ALJ reversibly erred because the hypothetical posed to the VE did not include "Dr. Stutts' opinions that [Plaintiff] appeared 'severely impaired,' exhibited moderate to

11

marked limitations of functioning in the areas of ability to interact appropriately with the public, supervisor(s), co-workers, to usual work situations, and changes in a routine work setting, and demonstrated 'periods of poor judgment.'" *Id.* at 13.

The ALJ's hypothetical to the VE unquestionably incorporated and was consistent with the RFC found by the ALJ. *Compare* Tr. 519-20 (hypothetical) *with* Tr. 456 (RFC finding). Considering the court's prior finding that the ALJ's RFC findings were consonant with the opinion of Dr. Stutts, which the ALJ expressly afforded "great weight," the court cannot conclude that the ALJ somehow erred in failing to mention various aspects of Dr. Stutts's opinion in the hypothetical posed to the VE. To hold otherwise would render the task of crafting a proper hypothetical unduly laborious, as ALJs would be required to pore over every piece of medical opinion evidence they find persuasive and extract every discrete point of the opinion for inclusion in absurdly lengthy hypotheticals that could easily stretch over several pages of hearing transcript. Nothing in the law requires that result. Instead, where, as here, the ALJ has crafted an RFC that judiciously recognizes and incorporates sound medical opinion, it is sufficient that the hypothetical reflect the RFC eventually articulated by the ALJ. Plaintiff's claim that the ALJ failed to pose a complete hypothetical to the VE is without merit.

## VI. CONCLUSION

For all of the reasons given above, the undersigned Magistrate Judge concludes that the decision of the Commissioner is AFFIRMED. A separate judgment will issue.

Done this 21st day of February, 2017.

                                          <u>/s/ Wallace Capel, Jr.</u>
                                          UNITED STATES MAGISTRATE JUDGE